UNITED STATES BANKRUPTCY COURT
DISTRICT OF IDAHO

| In re:<br><br>**PHILIP DEAN MANNLEIN,**<br><br>Debtor. | Case No. **15-00078-BPH**<br><br>**Chapter 7** |
|---|---|

**MEMORANDUM OF DECISION**

Appearances:

    Hyrum M. Zeyer, PETERSON ZEYER LAW, Boise, Idaho, Attorney for Debtor.

    Merrily K. Munther, MERRILY MUNTHER, PLLC, McCall, Idaho, Attorney for Pamela Obenauer.

**I.     Introduction**

In this reopened chapter 7[1] case, the Court must review and construe various pleadings filed more than 10 years ago in Philip Mannlein's ("Debtor") divorce case[2] to determine whether judgment liens may be avoided pursuant to § 522(f)(1)(A) as requested by Debtor. Pamela Obenauer ("Obenauer") objects to the relief requested arguing, *inter alia*, the judgments correspond to domestic support obligations. Finding Debtor failed to establish that the judgments do not represent domestic support obligations, the Court holds the liens underlying the judgments are not subject to avoidance.

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.
[2] Case No. CV-DR-2002-00707, District Court of the Fourth Judicial District of the State of Idaho, in Ada County (the "Domestic Relations Case").

MEMORANDUM OF DECISION–1

## II. Procedural Background

In 2023, Debtor moved to re-open his case to file the lien avoidance motions, explaining that after the case closed he discovered "judgment liens were recorded against his domicile[.]"[3] The Court re-opened the case and shortly after Debtor filed motions to avoid the liens under § 522(f)(1)(A).[4] Obenauer objected to the motions.[5]

The parties submitted briefs in support of their positions.[6] The Court held an evidentiary hearing where Debtor and Obenauer testified.[7] Having considered the evidence, written submissions, and arguments made by the parties, this decision sets forth the Court's findings, conclusions, and reasons for its disposition of the motions. Rules 7052 and 9014.

## III. Factual Background

### A. Prepetition events

Debtor and Obenauer were married in 1998 and had two children together. Obenauer filed for divorce in April 2002 and the divorce decree was entered in March 2003 in the Domestic Relations Case. Obenauer was awarded primary physical custody of the children and Debtor was obligated to pay child support.

---

[3] ECF No. 30.
[4] ECF Nos. 33, 35, and 36. In the motions, Debtor incorrectly stated that Obenauer filed the Contempt Motion. ECF Nos. 35 and 36, p. 2.
[5] ECF No. 37.
[6] ECF Nos. 44 and 47.
[7] ECF No. 50. Judge Joseph M. Meier conducted the hearing but passed away prior to issuing a decision. The case was thereafter reassigned to the Honorable Benjamin P. Hursh, Chief Judge of the Montana Bankruptcy Court. ECF No. 52. Upon reassignment and after considering all submissions and listening to the recording of the hearing, the Court directed that Debtor further supplement the record with certain filings from the state court docket. The Court also invited Obenauer to submit any other filings from the state court docket she thought may be relevant, after which the matter would be re-taken under advisement. ECF No. 54. Debtor supplemented the record as directed. ECF No. 56. Obenauer did not submit any filings from the state court docket but instead filed a post-hearing brief. ECF No. 57. The Court did not authorize, nor did Obenauer request permission to make such a filing. As a result, the Court disregards the filing with one exception. In the brief, Obenauer identified a Ninth Circuit Bankruptcy Appellate Panel decision issued after the evidentiary hearing—*Luetkenhaus v. Smith (In re Luetkenhaus)*, No. 3:22-bk-31915-DWH, 2023 WL 8254719 (9th Cir. BAP Nov. 29, 2023)—which concerned whether attorney's fees and costs awarded in a dispute over child custody were a domestic support obligation. The Court will treat Obenauer's brief as a notice of this decision.

MEMORANDUM OF DECISION–2

In connection with one of Debtor and Obenauer's ongoing post-divorce disputes in the Domestic Relations Case, Debtor filed a "Motion for Civil and or Criminal Contempt Charges" (the "Contempt Motion") against Obenauer.[8]  The subject matter of the Contempt Motion involved a Supplemental Custody Order.  The Contempt Motion included 50 separate enumerated counts each of which alleged Obenauer had violated the Supplemental Custody Order, or other order.[9]

The allegations in the Contempt Motion focused on claims that Obenauer: (i) was restricting access to the children, (ii) was alienating the affection of the children, (iii) was not providing appropriate care and supervision to the children, (iv) was not communicating health and education information to the other parent, (v) was scheduling activities during the other parent's parenting time, and (vi) was not allowing reasonable telephone contact between the children and other parent.[10]  Debtor requested a judgment finding Obenauer in contempt, to pay any fines the court may impose, and requiring her to pay his attorney's fees and costs for bringing the motion "pursuant to Idaho Code §§ 7-610, 12-120, 12-121[.]"[11]

Following the filing of the Contempt Motion, Debtor filed a "Motion to Compel Discovery Response[.]"  After a hearing, the motion was denied and Obenauer sought her attorney's fees and costs of $677.22 as the prevailing party.[12]  The state court granted Obenauer's motion for attorney's fees and costs and judgment was entered against Debtor and in favor of Obenauer on May 8, 2014 in the amount of $677.22 ("Judgment 1").[13]  The order stated

---

[8]  Ex. 104.
[9]  *Id.*, pp. 2-3.
[10] *Id.*
[11] *Id.*, p. 13.
[12] Ex. 107.
[13] Exs. 100 and 108. Judgment 1 was recorded on July 14, 2014 in Ada County, Idaho. Ex. 100. Judgment 1 was titled "Judgment for Attorney Fees and Costs." *Id.*  It stated, "It is hereby adjudged and decreed that Judgment is entered against [Debtor] in the amount of $677.22 for the reasonable attorney fees and costs incurred by [Obenauer] in defending the action, plus statutory interest from and after the date of Judgment." *Id.*

MEMORANDUM OF DECISION–3

the award was requested and made "pursuant to Idaho Rules of Civil Procedure ["I.R.C.P."] 37(d), 54(d) and 54(e), Idaho Code § 12-120, specifically 12-120(3), and § 12-121[.]"[14]

Shortly after Judgment 1 was entered, Obenauer moved for summary judgment on the Contempt Motion.[15] The motion asserted two bases for relief: first, that three of the counts were barred by the relevant statute of limitations, and more importantly, that Debtor admitted in his deposition that he had no evidence to support his allegations.[16] After a hearing, the state court granted summary judgment on 43 of the 50 counts.[17] A trial was held on June 20, 2014, on the remaining counts at which the state court entered a directed verdict in Obenauer's favor.[18] The state court dismissed the Contempt Motion and determined that Obenauer was "entitled to her attorney fees and costs[.]"[19]

Obenauer submitted a "Memorandum of Attorney Fees and Costs Re: Petitioner's Motion for Contempt" seeking fees and costs of $16,978.45.[20] The memorandum featured a prevailing party analysis wherein Obenauer's counsel explained, as detailed above, that Obenauer successfully defended against the Contempt Motion and thus was entitled to her fees and costs.[21] The memorandum also addressed the reasonableness of the fees, citing the twelve factors set forth in I.R.C.P. 54(e)(3), which must be considered when the state court awards attorney's fees in a civil action.[22] The memorandum did not cite a statute under which the fees were authorized.[23]

A second judgment was entered against Debtor and in favor of Obenauer on July 30,

---

[14] Ex. 108.
[15] Exs. 109 and 110.
[16] Ex. 109, p. 2.
[17] Exs. 109, 110, and 112.
[18] Ex. 111.
[19] Id.
[20] Ex. 102.
[21] Id., p. 3.
[22] Id., p. 4.
[23] Id.

MEMORANDUM OF DECISION–4

2014 in the amount of $16,978.45 ("Judgment 2") (collectively, Judgment 1 and Judgment 2 are referred to as the "Judgments" or "Judgment Liens").[24]

### B.     Post petition events

Debtor filed a no-asset chapter 7 bankruptcy in January 2015.[25] Debtor did not list Obenauer as a creditor on his schedules or amended schedules despite her having recently obtained and recorded the Judgments.[26] Debtor claimed a $100,000 homestead exemption in his residence, located at 13524 W. Meadowdale Dr., Boise, Idaho 83713 (the "Property"), which was the statutory maximum at the time under Idaho law.[27] Debtor scheduled the Property as being worth $114,300 and encumbered by a deed of trust held by Green Tree totaling $85,662.67 (the "Green Tree Lien"), a "second mortgage" held by Key Bank totaling $35,000 in his deceased father's name (the "Key Bank Lien"), and a service lien totaling $2,319.87.[28] These encumbrances totaled $122,982.84. Debtor received a discharge in his bankruptcy and the case was closed in September 2015.[29]

Debtor moved to re-open his case to file the lien avoidance motions, explaining that after the case closed he discovered "judgment liens were recorded against his domicile[.]"[30] The Court re-opened the case and Debtor filed his motions to avoid the liens under § 522(f)(1)(A).[31]

---

[24] Ex. 101.
[25] ECF No. 1. The docket in this case, including Debtor's schedules, was not made a part of the Court's record. The Court will take judicial notice of the docket. *In re Parkinson Seed Farm, Inc.*, 640 B.R. 218, 230 n.2 (Bankr. D. Idaho 2022) (citing *Hillen v. Specialized Loan Servicing, LLC (In re Leatham)*, 2017 WL 3704512, *2 (Bankr. D. Idaho Aug. 24, 2017)).
[26] ECF Nos. 1, 14, and 17.
[27] ECF No. 1, p. 13.
[28] *Id.*, p. 15.
[29] ECF Nos. 25 and 28.
[30] ECF No. 30.
[31] ECF Nos. 33, 35, and 46. In the motions, Debtor incorrectly stated that Obenauer filed the Contempt Motion. ECF Nos. 35 & 36, p. 2.

MEMORANDUM OF DECISION–5

IV. **Applicable Law and Analysis**

Under § 522(f)(1)(A), a debtor may avoid a judicial lien to the extent of impairment if three elements are met: (1) there was a "fixing of the lien on an interest of the debtor in property[;]" (2) the lien "impairs an exemption to which the debtor would have been entitled[;]" and (3) the lien does not secure "a debt of a kind that is specified under section 523(a)(5)[,]" that is, a debt for a domestic support obligation. *See In re Ashcraft*, 415 B.R. 428, 430 (Bankr. D. Idaho 2008) (citations omitted). The debtor must prove each of these elements by a preponderance of the evidence. *See Gardner v. Dykeman Constr. (In re Gardner)*, 2010 WL 6259995, at *2 (9th Cir. BAP 2010) (citations omitted).[32] There is no dispute the Judgment Liens encumber Debtor's interest in the Property.[33] However, Obenauer challenges the second and third elements, asserting the Judgments do not impair Debtor's homestead exemption and that the Judgments represent debt for a domestic support obligation.[34]

---

[32] In his brief Debtor asserted that Obenauer has the burden of proof and must show that the debt is for a domestic support obligation under § 523(a)(5). ECF No. 44, p. 3. If this were a non-dischargeability adversary proceeding, Debtor would be correct. However, here Debtor bears the burden of proof on all elements, including demonstrating the debt is *not* for a domestic support obligation. The following decisions specifically hold so: *In re Banner*, 394 B.R. 292, 300 (Bankr. D. Conn. 2008); *DeAngelis v. Lacoste (In re DeAngelis)*, 2010 WL 1509111, *2 (Bankr. M.D. Pa. 2010); *In re Ballinger*, 502 B.R. 558, 562 (Bankr. E.D. Ark. 2013). The Court finds this allocation of the burden of proof is in line with the Ninth Circuit's *Estate of Catli v. Catli (In re Catli)*, 999 F.2d 1405, 1406 (9th Cir. 1993) decision cited by the Ninth Circuit BAP in *Gardner*, which requires the debtor to establish each element of lien avoidance. In *Gardner*, the issue of whether the lien secured a domestic support obligation was not at issue, so the court did not include it in its recitation of the elements for lien avoidance under § 522(f)(1)(A).

[33] The parties agree that the Judgments were recorded and constitute liens on the Property. The Court finds the first element is satisfied.

[34] Alternatively, Obenauer argued the Judgments are non-dischargeable under § 523(a)(15) as debts "to a spouse, former spouse, or child of the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, or a determination made in accordance with State or territorial law by a governmental unit[.]" This argument is irrelevant to Debtor's motions. If the Judgments are for § 523(a)(15) debt, then Debtor may still avoid the liens because they are not debts "of a kind that is specified under section 523(a)(5)." § 522(f)(1)(A). Second, as the Court noted *supra* this is not a non-dischargeability proceeding. Actions to declare a debt non-dischargeable must be initiated in an adversary proceeding. Rule 7001(6).

MEMORANDUM OF DECISION–6

A.  **The Judgment Liens impair Debtor's homestead exemption**

Obenauer's impairment challenge is without merit because it is premised on the present-day value of the Property and present-day amount of the liens.[35] This is incorrect. It is well established that when applying § 522(f), "the property value, the lien amounts, and exemptions as they existed on the bankruptcy petition date control." *Rosen v. Chiu (In re Chiu)*, 2017 WL 1149076, at *3 (9th Cir. BAP 2017) (citations omitted); *In re Salanoa*, 263 B.R. 120, 123 (Bankr. S.D. Cal. 2001). The indicia of values and amounts in the record were provided by Debtor. Obenauer did not contest either the value or amounts. Using these figures, it is clear the Judgments impair Debtor's homestead exemption and the second element is satisfied.

Section 522(f)(2) supplies a formula to assess whether an exemption is impaired by a lien. Under this statute, a lien:

> shall be considered to impair an exemption to the extent that the sum of—
>     (i) the lien;
>     (ii) all other liens on the property; and
>     (iii) the amount of the exemption that the debtor could claim if there were
>     no liens on the property;
> exceeds the value that the debtor's interest in the property would have in the absence of any liens.

*Id.* This calculation is performed as to each target lien independently, and in order of reverse priority. *Bank of Am. Nat'l Tr. & Sav. Ass'n v. Hanger (In re Hanger)*, 217 B.R. 592, 595 (9th Cir. BAP 1997). A lien that has been avoided is not considered in the impairment calculation. *Id.* Applying this formula to Obenauer's judicial liens yields the following result:[36]

---

[35] Obenauer submitted estimates of the Property's value as of October 2023 from various real estate websites which ranged from $360,000 to more than $400,000. Exs. 200-203. Obenauer estimated the current amount of the Judgments with accrued interest exceeded $26,000 and that the other encumbrances on the Property were now significantly less.

[36] Debtor did not include the $2,319.87 service lien in the impairment calculation in his motions. Its inclusion (or not) in the calculation is immaterial because the liens underlying the Judgments would fully impair Debtor's homestead exemption regardless. Debtor also did not calculate the interest that accrued on the Judgments from their date of entry to the petition date. Again, given the statutory interest rate and the relatively short period of time between the entry of the Judgments and the petition date, it is immaterial to the outcome of the motions.

MEMORANDUM OF DECISION–7

| Target lien: Judgment 2 | $16,978.45 + statutory interest to petition date |
|---|---|
| + All other liens on Property: | |
|     Green Tree Lien | $85,662.67 |
|     Key Bank Lien | $35,000 |
|     Judgment 1 | $677.87 |
| + Exemption if no liens on Property | $100,000 |
| – Value of Property as of petition date | $114,300 |
| = Extent of impairment | $124,018.99 |

| Target lien: Judgment 1 | $677.87 + statutory interest to petition date |
|---|---|
| + All other liens on Property: | |
|     Green Tree Lien | $85,662.67 |
|     Key Bank Lien | $35,000 |
| + Exemption if no liens on Property | $100,000 |
| – Value of Property as of petition date | $114,300 |
| = Extent of impairment | $107,040.54 |

As to Judgment 2, since $16,978.45 is less than $124,018.99, Judgment 2 fully impairs Debtor's homestead exemption. As to Judgment 1, since $677.87 is less than $107,040.54, Judgment 1 also fully impairs Debtor's homestead exemption. Accordingly, the liens underlying the Judgments may be avoided entirely, so long as the liens do not secure a § 523(a)(5) debt.

    **B.**    **The judicial liens secure a debt under § 523(a)(5).**

To be avoidable a lien cannot secure a "domestic support obligation." §§ 522(f)(1)(A), 523(a)(5). Section 101(14A) defines a "domestic support obligation," in pertinent part, as a debt "[1] owed to or recoverable by … a [] former spouse, or child of the debtor … [2] in the nature of alimony, maintenance, or support … of such [] former spouse, or child of the debtor… without regard to whether such debt is expressly so designated" by "[3] reason of applicable provisions of … an order of a court of record[.]" Whether attorney's fees and costs awarded in domestic relation matters are in the nature of support is a question of federal law requiring a factual determination by the bankruptcy court, though a relevant factor to consider is how the debt is characterized under state law. *Rehkow v. Lewis (In re Rehkow)*, 239 F. App'x 341, 342 (9th Cir. 2007) (citations omitted).

MEMORANDUM OF DECISION–8

> As recently summarized by the Ninth Circuit Bankruptcy Appellate Panel:
>
> Cases in the Ninth Circuit and in other circuits generally hold that attorneys' fees awarded in connection with a dissolution proceeding are nondischargeable in bankruptcy under § 523(a)(5) as … support. Similarly, the vast majority of reported decisions dealing with an award of attorneys' fees in a child custody proceeding have concluded that the fees were in the nature of the child's support within the meaning of § 523(a)(5). Courts have reached this conclusion because determination of child custody is essential to the child's proper support, [and] attorney fees incurred and awarded in child custody litigation should likewise be considered as obligations for support, at least in the absence of clear indication of special circumstances to the contrary. The legal question is not whether repayment of the debt will benefit the children, but whether the basis of the debt benefitted the children.

*Luetkenhaus v. Smith (In re Luetkenhaus*, 2023 WL 8254719, at *7 (9th Cir. BAP 2023) (internal citations omitted).[37] Despite Debtor's arguments, the issues underlying the Contempt Motion, including the discovery dispute, involve the welfare of the children. Further, Debtor has not demonstrated the debt is *not* for a domestic support obligation.[38]

Debtor's argument relies on *Norris v. Norris (In re Norris)*, 94 I.B.C.R. 233, 235 (Bankr. D. Idaho 1994) for the proposition that in determining whether awards of attorney's fees are in "in the nature of support," the primary consideration is whether the award of fees was based upon financial need. Debtor's reliance on *Norris*, fails to recognize the underlying issues in this case involved the custody and welfare of the children, not property division or an explicit award of support. As a result, the facts in *Norris* are distinguishable from this case. Cases that consider child custody along with a fee award are more analogous to the facts here and more instructive.

As recognized by the Ninth Circuit BAP in *Rehkow v. Lewis*, "the vast majority of

---

[37] In *Luetkenhaus*, 2023 WL 8254719 at *7–8, the Ninth Circuit BAP held that the bankruptcy court did not err in determining that attorney's fees and costs awarded to the non-debtor spouse for the debtor's unsuccessful appeal of an order changing custody from the debtor to the non-debtor spouse were a domestic support obligation under § 523(a)(5). The BAP opined "[t]here was sufficient evidence for the bankruptcy court to find that the attorneys' fee debt was incurred while litigating child custody proceedings in which issues involving the best interests of the child were in dispute, and therefore, the proceedings were in the nature of support[.]" *Id.* at *8.

[38] Neither parties' testimony at the hearing was particularly insightful or provided a clear explanation of the events before the state court. Instead, this Court has relied on the actual pleadings that were filed with that court and the issues the state court was tasked with considering.

MEMORANDUM OF DECISION–9

reported decisions dealing with an award of attorneys' fees in a child custody proceeding have concluded that the fees were in the nature of the child's support within the meaning of § 523(a)(5)."[39] Debtor's arguments narrowly focus on the specific language employed by the state court in its orders awarding attorneys' fees, while entirely ignoring the subject matter of the underlying Contempt Motion: the welfare of the children. For example, Debtor characterizes the Judgments as judgments for fees and costs and emphasizes the basis for the award was Obenauer's status as the "prevailing party" not her financial need. Debtor emphasizes the absence of any financial need analysis in the Judgments as indicative the awards are not "support" for purposes of § 523(a)(5). Although the underlying Judgments' brevity makes it more difficult to ascertain the state court's intent, this Court has the benefit of the Contempt Motion, which resulted in entry of both Judgments.

      The Contempt Motion recites no less than 50 counts that directly call into question Obenauer's fitness as the custodian of the children and the welfare of the children. For example, Debtor alleged: Obenauer failed to facilitate visitation with him; interfered with communication between him and the children; Obenauer kicked a child resulting in one child threatening suicide; Obenauer accused one child of flirting with Obenauer's new husband; bullying the child; excessive drinking by Obenauer to the point of drunkenness. These are limited examples to illustrate the substance and tenor of the Contempt Motion.

---

[39] No. AZ-04-00936, 2006 WL 6811011, at *3 (9th Cir. BAP Aug. 17, 2006), *aff'd*, 239 F. App'x 341 (9th Cir. 2007); *see also Carpenter v. Flesner Wentzell, LLC (In re Amos)*, 614 B.R. 866, 873 (Bankr. E.D. Mo. 2020) ("Attorney's fees incurred by a party defending her rights under a child support order are domestic support obligations."); *Sonntag v. Prax*, 115 Fed. Appx. 680, 682 (5th Cir. 2004) ("Attorney fees awarded in connection with a child custody dispute are for the benefit of the parties' children, as the purpose of such a proceeding is to determine who can provide the best home and environment for the children at issue."); *Baxter v. Baxter (In re Baxter)*, 2023 Bankr. LEXIS 200, at *13 (Bankr. W.D. Okla. 2023) ("The vast majority of courts … have held that an award of attorney fees is so inextricably intertwined with proceedings affecting the welfare of a child, such as custody or child support litigation, to be deemed 'support' within the meaning of § 523(a)(5)."); *Miller v. Gentry (In re Miller)*, 55 F.3d 1487, 1490 (10th Cir. 1995) ("Since determination of child custody is essential to the child's proper 'support,' attorney fees incurred and awarded in child custody litigation should likewise be considered as obligations for support, at least in the absence of clear indication of special circumstances to the contrary.")

MEMORANDUM OF DECISION–10

The allegations in the Contempt Motion raise serious issues involving Obenauer's fitness as a mother and failure to comply with the Supplemental Custody Order. If Debtor had prevailed on any of the counts alleged, it is likely the state court would have granted relief such as modification of the Supplemental Custody Order, rather than contempt. Unlike Debtor, this Court cannot limit its analysis to merely the language in the Judgments and wholly ignore the substance of the Contempt Motion. Instead, the pleadings filed by the parties that framed the issues and ultimately resulted in entry of the Judgments demonstrates the underlying issues involved the welfare of the children. The Judgments are derivative of the Contempt Motion and must be construed as support for purposes of § 523(a)(5).

## V.  Conclusion

To prevail under § 522(f)(1) Debtor must show: (1) there was a fixing of the lien on an interest of the debtor in property; (2) the lien impairs an exemption to which the debtor would have been entitled; and, (3) the lien does not secure a debt of a kind that is specified under § 523(a)(5). It is uncontested Judgments 1 and 2 encumber Debtor's interest in the Property. Based on the values on the petition date, Judgments 1 and 2 impair Debtor's exemption. However, the underlying Contempt Motion unequivocally raises innumerable issues that involve the children's welfare. This Court cannot conclude, based on the evidence before it, that the Judgments do not secure a § 523(a)(5) debt. To the contrary, absent the Contempt Motion there would seemingly be no basis for Judgments 1 or 2. A separate order denying Debtor's motions will be entered.

DATED: June 17, 2024



HON. BENJAMIN P. HURSH
U. S. BANKRUPTCY JUDGE
SITTING BY DESIGNATION
U.S. COURTS, DISTRICT OF IDAHO

MEMORANDUM OF DECISION–11